The jndgment of the court was pronounced by
Slidell, J.
The counsel of Widow Rivet states, in argument, that evidence was offered in the court below to prove that the improvements which have in part given rise to this controversy, were erected by Louis Rivet, and that the evidence was rejected by the court. There is no bill of exceptions nor other entry in the record, showing an attempt to adduce such evidence. In its absence we see no reason to disturb so much of the judgment as sustains the privilege of Rils upon the price of the improvements.
In the consideration of the claim of mortgage and privilege, asserted by Widow Rivet, our inquiry must be first directed to the nature of her rights. Are they dotal or paraphernal ? Her claim is based upon her interest in the estate of her deceased parents, which is enunciated in the marriage contract in *144 the following words: Before me, John Dutton, judge, in and for the parish of Iberville, came and appeared Louis Rivet, an inhabitant of the said parish, of the age of majority, of the one part; and Henrietta Le Blanc, minor, daughter of Joseph LeBlanc and Cor aline Longuip&e, both deceased; said Henrietta, duly assisted and authorized in passing these presents by her curator ad bona, Pierre Rivet, junior, of the other part. Which parties did make and enter in to a contract of marriage, in the terms hereinafter set forth. Article 1st: The part and portion of property belonging to the future husband, a tract of land of one and one-halfarpents front by thirty arpents in depth; which land, together with other property of the said future husband, is amicably valued by the parties at $1,000.
Article 2d: The part and portion of the future wife consists in her share in the successions of her father and mother, with reference to the liquidations of said successions, when they shall be made, for the amount of the said shares.
Article 3d: In case of ihei'e being no-children born of said marriage, or in case children shall be born of said marriage and die before either of the parties of this contract, then the heirs of the first deceased shall have a right to claim forthwith the restitution of the share of the first deceased brought in this contract.
Article 4th: If no children shall be born of the future marriage, or being born, should all die before either of the parties of this contract shall die, then after the restitution of the proper goods brought by the parties in the first and second articles of this act, the survivor shall have a right to the enjoyment, during the lifetime of such survivor, of all the acquets made or gained during the future marriage.
This marriage contract was made in 1821, and its legal effect must be controlled by the Code of 1808, then in force. It is there said: If there be no marriage agreement, nor any special convention, the rights of the husband and wife are determined by law, and by the rules contained in the following chapters : art 8, p. 324. The most ordinary conventions in marriage contracts are the settlement of the dowry, (la constitution de dot,) and the various donations which the husband and wife may make to each other, either reciprocally, or the one to the other, or which they may receive from others in consideration of the marriage. Ib. art. 9. In the following chapter it is said: By dowry, are meant the effects which the wife brings to the husband to support the expenses of the marriage. Art. 16. Every thing which the wife settles upon herself, (tout ce que la femme se constitue,) or which is given her by the marriage contract, is included in the dowry, unless there be a contrary stipulation. Art, 17. The settlement of the dowry, (la constitution de dot,) may include all the present and future effects of the wife, &e. Art. 18. In art. 56, page 334, it is said: All the effects of the wife, which have not been settled on her as a dowry, are paraphernal.
We do not consider the words “ dowry, settlement, constitution de dot,” as sacramental. Quia in stipulatione nan est necessarie dotis adjectio, etiam in donatione tantumdem ducimus. But, though those very words are not indispensable, the marriage contract under the Code of 1808 should contain words of equivalent import, clearly indicating the intention of the wife to clothe her property with a dotal character. For it must be observed, that in making it so she is in reality impairing her own rights. The whole income of the dotal property belongs to the husband for the purposes of the marriage. He has the sole administration ; and the wife cannot deprive him of it. If an immovable it is inalienable during the marriage, except in a limited class of cases. Arts. 28, 29. 36 Ib. *145 But on the contrary, the paraphernal property of the wife, under that code, is in a much larger sense her own, and under her own control. She had the administration and enjoyment of it; she was bound to contribute only one third of her income towards the matrimonial expenses, and might alienate it with the authorisation of the husband, or if he should not give it, with the authorisation of a court of justice. Arts. 51, 58. The constitution of dowry by the wife is therefore in the nature of a gift; and an intention to give must be clear and unequivocal. Nemo facile presumptur donare. The same conclusion results from the consideration that the paraphernal character of the wife’s proporty is the general rule, and dotal the exception. La constitution d’une dot ne se présumed’ailleurs jamais: celui qui attribué á une chose la qualité dotóle, doit prouver cette qualité. Mackelday, Insti. de Droit Romain, 268.
Applying these principles to the case at bar we are unable to deduce,from the instrument a clear intention on the part of Mrs. Rivet to clothe her property with the dotal character. The expressions dowry,- settlement,- constitution, are nowhere used, nor language of equivalent import. The only words which would seem to indicate such an intention, we mean the words bought and restitution, are susceptible of an interpretation quite consistent with an intention to leave the wife’s estate under the dominion of the general rule. These words are used with reference to the properly both of the husband and wife ; and the object of the recital of what they respectively owned may all have been to avoid discussions, at the dissolution of the marriage', as to what property the parties owned before marriage, and what was acquired during the marriage. For, by the contract, the survivor was to have the usufruct of the entire community. See also Rian v. Rian’s Syndics, 4 Martin, 342, 591. Duranton, liv. 3, tit. 5. § 333, et seq.
It is proper to observe that the Code of 1825 uses broader language than that of 1808 in declaring what property is to be considered dotal. See Art. 2318, &c.
Being of opinion that the interest of the Widow Rivet in the succession of her parents was paraphernal, it was incumbent upon her to prove that the share which was allotted to her by the partition, prepared by the parish judge after her marriage,, was received by her husband.
It is therefore decreed, that so much of the judgment of the court below as sustains the privilege of J. H. Rils for $250 be affirmed. And it is further decreed, that so much of the judgment as dismisses the opposition of J. H. Rils, be reversed, and that said opposition be remanded for a new trial, and for further proceedings according to law; the costs of the appeals to be paid by the said Widoio Rivet.